David A. Cortman
Kevin H. Theriot
Denise M. Harle
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 (Fax)

Patricia D. Stewart
STEWART LAW OFFICES
153 Prospect Street
Norwell, MA 02061-1138
(781) 659-2220

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARING FAMILIES PREGNANCY SERVICES INC. d/b/a MOBILE CARE,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF HARTFORD,<br><br>        Defendant. | Case No.<br><br>**VERIFIED COMPLAINT** |

## INTRODUCTION

1.      This challenge seeks to protect the right of a pro-life, faith-based pregnancy care center to exercise its religious beliefs and to speak about those beliefs so it can help women with concerns about pregnancy and motherhood.

2.      Caring Family Pregnancy Services is a private, faith-based, non-profit organization that offers free pregnancy testing, ultrasounds, options counseling, adoption referrals, parenting classes, Bible studies, support groups, referrals for housing and job training,

and material resources like baby clothes, diapers, formula, cribs, and car seats to women in the Hartford area.

3.      Caring Families' motto is "Compassion for our Community." Caring Families' mission is to share the love and truth of God. Caring Families furthers this mission by providing compassion and hope to young women and men who find themselves facing unplanned pregnancies, to help encourage them to make life-affirming decisions.

4.      Caring Families also runs a mobile pregnancy care center called Mobile Care, which is operated out of a mobile unit and makes regularly scheduled visits to Hartford and other communities in Connecticut.

5.      The City of Hartford has enacted an Ordinance that forces Mobile Care to make compelled statements on signs both outside and inside its facility, on its website, and over the telephone in conversations with clients or potential clients.

6.      These compelled statements incorrectly imply that Mobile Care is not qualified to provide the free services it offers.

7.      The Ordinance requires pro-life pregnancy resource centers like Mobile Care to post signs stating and to verbally state whether there is a "licensed medical provider" on site at all times supervising all "medical services" — and does not define those key terms.

8.      No other entities are required to post the signs or make the verbal statements. Hartford exempts abortion clinics, community health centers, and all other health care entities from the Ordinance.

9.      Hartford exempts all other entities besides pro-life pregnancy resource centers, even if those other entities meet all the criteria that Hartford is purportedly concerned about.

10.     The practical result of enforcing the Ordinance's Compelled Speech provision would be not only to inhibit a religious ministry from furthering its mission and message but also to force religious speakers to speak messages with misleading, confusing and negative implications.

11.     This violates the laws of the State of Connecticut and the Constitution.

12.     Hartford is doing all of this under the guise of a public health ordinance, Ord. No. 25–17, but Hartford is not actually interested in providing "comprehensive information" about health care to pregnant women or ensuring "timely access to[] all types of reproductive health services," as it claims.

13.     Instead, Hartford is intent on interfering with certain views about life, pregnancy, and motherhood. Hartford has thus crafted a speaker-based, viewpoint-based law targeting the speech only of speakers espousing certain pro-life moral, religious, and philosophical beliefs.

14.     The Ordinance itself confesses to being a "regulation that is more protective of consumers of pregnancy center services."

15.     But Hartford does not distinguish clients of pregnancy services centers from clients of other pregnancy-related service providers, beyond a conclusory attack on pregnancy services centers themselves, unsupported by any evidence.

16.     To stop this imminent irreparable harm, Mobile Care asks this Court to enjoin enforcement of the Ordinance and to declare it unconstitutional, so Mobile Care may freely speak its beliefs, freely exercise its faith, and freely serve the women of Hartford who may wish to benefit from its free support services.

## JURISDICTION AND VENUE

17.     This civil rights action raises federal questions under the United States

Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of

1871, 42 U.S.C. § 1983.

18.     This Court has original subject matter jurisdiction over the federal claims by

operation of 28 U.S.C. §§ 1331 and 1343.

19.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. §

1367.

20.     This Court has authority to issue the requested declaratory relief pursuant to 28

U.S.C. §§ 2201 and 2202, the requested injunctive relief and damages under 28 U.S.C. § 1343,

and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

21.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because all events

giving rise to the claims detailed here occurred within the District of Connecticut and Defendants

reside in the District of Connecticut.

## PLAINTIFF

22.     Plaintiff Caring Families Pregnancy Services, Inc., including its branch Mobile

Care, is a non-profit, religious entity organized under the laws of the State of Connecticut, with a

principal place of business at 968 Main St, Willimantic, Connecticut 06226.

## DEFENDANTS

23.     Defendant City of Hartford is a municipality organized under the laws of the State

of Connecticut, and is subject to suit under 42 U.S.C. § 1983 and the common law.

# FACTUAL BACKGROUND

**Mobile Care's Services**

24.     Mobile Care, as a branch of Caring Families, is a faith-based, non-profit organization.

25.     Mobile Care offers lab-quality pregnancy testing and limited obstetric ultrasounds free of charge to all clients. Mobile Care also provides local referrals to additional services, such as obstetric care, adoption services, or parenting programs.

26.     Mobile Care describes all of these services on its website. Mobile Care's website also provides a number that individuals can call during business hours to ask any questions about Mobile Care's services.

27.     Mobile Care provides its free services in Hartford a few days each month. Clients may make appointments by phone or online through Mobile Care's website.

28.     Mobile Care is staffed with an onboard community advocate volunteer who provides personalized assistance to each client. Mobile Care is also staffed at most times with a registered nurse or a certified ultrasound technician, or both.

29.     About 3 in 4 pregnancy tests that Mobile Care administers turn out to be negative.

30.     When a woman's pregnancy test is negative, Mobile Care's registered nurse will discuss with the woman strategies for avoiding risk of pregnancy.

31.     When a woman's pregnancy test is positive, Mobile Care's registered nurse will determine the gestational age based on last menstrual period and will offer an ultrasound if the gestational age is 6 weeks or greater, or offer an appointment for an ultrasound at a later date.

**Mobile Care's Religious Beliefs**

32.     Mobile Care's mission is to execute Caring Families' motto of "Compassion for our Community" by sharing the love and truth of God.

33.     Mobile Care does this both through acts of service — empowering women and, in its own words, "providing women not only with exceptional care but up-to-date medical information, resource referrals, as well as a much-needed listening ear" — and through the inculcation of Christian beliefs and values.

34.     Mobile Care believes that Jesus' transforming love can free people from hopelessness and fear when facing difficult circumstances.

35.     Mobile Care believes that the Bible teaches that God creates each human being in His image and forms babies in their mothers' wombs, such that every life has precious value and worth, from the moment of conception.

36.     Mobile Care believes that women should be respected, encouraged, supported, and protected.

37.     Mobile Care's sincerely held religious belief is that it should convey and promote messages about God's creation of each unique individual human life.

38.     Mobile Care's sincerely held religious belief is that it should be loving, clear, and honest in its interactions with others.

39.     Mobile Care's sincerely held religious belief is that it should care for and support women facing difficult decisions and unplanned motherhood.

40.     Inspired by the love of Jesus, Mobile Care fulfills its religious mission by serving and teaching women about their unique value as human beings made in God's image, the precious value of babies in the womb, and the hope and peace that Jesus Christ offers.

41.     Mobile Care clients are offered Christian counseling, teaching, and advice provided by Mobile Care staff and volunteers, as well as referrals to Caring Families' main center in nearby Willimantic, where clients can receive free diapers, wipes, baby clothes, blankets, cribs, car seats, formula, bassinets, changing table, toys, and books.

42.     Mobile Care clients are also offered referrals to other agencies for assistance with housing, employment, and job training.

43.     Mobile Care hopes that by loving, serving, and counseling women in need, Mobile Care encourages those it serves to put their faith in Jesus and free themselves from unhealthy behaviors, destructive relationships and habits, fears, and hopelessness.

44.     It would violate Mobile Care's sincerely held religious beliefs about truthfulness and would violate Mobile Care's ability to communicate its sincerely held religious beliefs about God's creation to force Mobile Care to engage in the misleading Compelled Speech.

**The Ordinance's Compelled Speech**

45.     The Ordinance's Compelled Speech provision mandates that pregnancy resource centers like Mobile Care make certain required statements, including to "disclose if it does not have a licensed medical provider on the premises who provides or directly supervises the provision of all medical services provided at such pregnancy services center at all times during which these services are being provided."

46.     The Ordinance circularly defines "licensed medical provider" to mean "a person licensed under the provisions of federal, state, or local law to provide medical services," and does not define "medical services."

7

47.     The Compelled Speech must be made "[i]n writing . . . in a size and style as determined in accordance with rules promulgated by the City Department of Health and Human Services."

48.     The Compelled Speech must be written "on (A) at least one (1) sign conspicuously posted in the entrance of the pregnancy services center; (B) at least one (1) additional sign posted in any area where clients wait to receive services; and (C) on any website of the pregnancy services center."

49.     The Compelled Speech must also be spoken "[o]rally, whether in person or by telephone communication, whenever a client or prospective client requests . . . (A) abortion, (B) emergency contraception, or (C) prenatal care."

50.     The City of Hartford Department of Health and Human Services has promulgated a Rule pursuant to the Ordinance, requiring that the compelled written and oral statements contain the following exact words: "This facility does not have a licensed medical provider on site to provide or supervise all services."

51.     The Rule is therefore inconsistent with the Ordinance, because the Ordinance references "direct[] supervis[ion]" of "all medical services," while the Rule requires compelled speech more broadly regarding "supervis[ion]" of "all services."

52.     The Rule further requires the physical signs to measure 11 by 17 inches and the Compelled Speech to be written in 72-point font (lettering 1 inch tall).

53.     The Rule further mandates that the Compelled Speech be posted (1) outside the entrance to a pregnancy services center, with the closest edge of the sign no more than 12 inches from the edge of the door, and the top of the sign exactly 66 to 70 inches from the ground, and

(2) on the reception desk or the adjacent wall, no more than 12 inches from the reception desk, and with the top of the sign exactly 66 to 70 inches from the ground.

54.     The Rule additionally mandates that the Compelled Speech on a pregnancy resource center's website must be on the front page of the website, in at least 14-point font.

55.     Failure to engage in the Compelled Speech is punishable by a civil penalty of $100 per offense, with each day constituting a separate offense.

56.     Although Mobile Care has a licensed medical provider — either a registered nurse or a certified ultrasound technician, or both — on its unit at most times it is in operation, Mobile Care is uncertain whether Hartford may apply the Compelled Speech provision to Mobile Care, because of the vague wording of the Ordinance and implementing Rule.

57.     In addition, there are times when Mobile Care's licensed medical providers are not on the premises. Under the Ordinance, Mobile Care would be required to make the burdensome Compelled Speech at all times — permanently posted both in and on its facility and on its website, and over the telephone in conversations with potential clients.

58.     Mobile Care is able to provide excellent and adequate care to its clients, based on the services it offers, even when a licensed medical provider is not on the premises.

59.     Certain services that Mobile Care provides do not require a licensed medical provider — for example: collecting client intake forms; referring clients to social support agencies and other local resources; providing urine stick pregnancy tests to clients; counseling pregnant clients on next steps in motherhood; discussing with pregnant clients the pros and cons of adoption, abortion, or keeping their babies.

60.     The Ordinance does not define "medical services."

61.     Because the Ordinance does not define "medical services," Mobile Care does not know whether Hartford considers some of these services to be "medical."

62.     Mobile Care is not posting the Compelled Speech as a sign in and on its facility, or on its website, and is not making the Compelled Speech over the phone to its clients or potential clients.

63.     Hartford states that the Ordinance is intended to "ensure that individuals in Hartford have access to comprehensive information about, and timely access to, all types of reproductive health services," in part because "[p]regnancy decisions are time sensitive."

64.     But the speech compelled by the Ordinance does not provide "access to comprehensive information about . . . all types of reproductive health services."

65.     Nor does the speech compelled by the Ordinance provide "timely access to[] all types of reproductive health services" themselves.

66.     Hartford further states as a basis for the Ordinance that "[i]t is vital that pregnant women in Connecticut know whether they are getting medical care from licensed professionals." But the content of the speech compelled by the Ordinance is not tailored to inform pregnant women whether they are getting medical care from licensed professionals.

67.     Instead, the Ordinance's Compelled Speech provision makes a pregnancy resource center state in broad terms that at some unspecified times, while certain unspecified services are provided, there might not be a licensed medical provider on site "supervising" certain unspecified services.

68.     Moreover, the Ordinance's Compelled Speech provision is not narrowly tailored to inform pregnant women whether they are receiving medical care from licensed professionals because it applies only to some facilities that serve some pregnant women but not to other

facilities that serve many or exclusively pregnant women. In the case of Mobile Care, approximately three-fourths of its clients are not pregnant women.

69.     Hartford further states that "some CPCs have engaged in conduct that intentionally leads clients to believe that they are in a reproductive health care facility and/or have received reproductive health care and counseling from a licensed medical provider when, in fact, they have not."

70.     Hartford does not provide any specifics for these assertions and does not purport to have made any attempts, prior to compelling speech through the Ordinance, to address any such conduct.

71.     Hartford does not assert that it has taken any measures, prior to compelling speech through the Ordinance, aimed at ensuring that its citizens have access to "all types of reproductive health services" or aimed at ensuring that pregnant women "know whether they are getting medical care from licensed professionals."

**The Ordinance's Exemptions**

72.     The Ordinance applies only to "pregnancy services centers," defined as facilities, "including mobile facilities, the primary purpose of which is to provide services to women who are or may be pregnant, that either (1) offers to provide or does provide obstetric ultrasounds, obstetric sonograms or prenatal care to pregnant women, or (2) has the appearance of a medical facility."

73.     The Ordinance dictates that a pregnancy services center has "the appearance of a medical facility" if it meets at least two of the following criteria:

- "offers pregnancy testing and/or pregnancy diagnosis"

- "has staff or volunteers who wear medical attire and uniforms"

11

- "contains one (1) or more examination tables"

- "contains a private or semi-private room or area containing medical supplies and/or medical instruments"

- "has staff or volunteers who collect health information from clients"

- "is located on the same premises as a state-licensed medical facility or provider or shares facility space with a state-licensed medical provider"

74.     In other words, a pregnancy resource center that simply offers free pregnancy tests, identical to the store-bought kind, would be subject to the Ordinance, if it keeps those pregnancy tests in a "semi-private area" — even if that center engages in no medical services, does not advertise any medical services, and primarily focuses on offering free emotional, spiritual, practical, and material resources.

75.     Likewise, a pregnancy resource center that asks women whether they have experienced any pregnancy symptoms and happens to be located in the same office park as a dentist would be subject to the Compelled Speech under the Ordinance — even if that center engages in no medical services, does not advertise any medical services, and primarily focuses on offering free emotional, spiritual, practical, and material resources.

76.     The Ordinance exempts a pregnancy services center only if the pregnancy center has "a licensed medical provider . . . present to directly provide or directly supervise the provision of all medical services mentioned in this section at all times during which these services are being provided at the facility, including abortion, emergency contraception, prenatal care, pregnancy diagnosis, obstetric ultrasounds or sonograms."

77.     The Ordinance exempts any "facility or office" that is licensed by the state or federal government "to provide medical or pharmaceutical services."

78.     These exemptions mean that abortion clinics, which are licensed under state law, and community health centers, which are licensed under federal law, need not comply with the Ordinance's Compelled Speech — even if those facilities do not have a licensed medical provider present at all times directly providing or directly supervising all medical services.

79.     In addition, because of the Ordinance's exemption for government-licensed facilities, facilities such as abortion clinics and community health centers are exempt from the Ordinance's Compelled Speech mandates, even if those facilities do not provide "all types of reproductive health services" or provide "comprehensive information about, and timely access to, all types of reproductive health services."

80.     Furthermore, the Ordinance's exemptions excuse hospitals, outpatient clinics, and private physicians' offices from compliance, even if those facilities serve many pregnant women and do not provide "all types of reproductive health services" or provide "comprehensive information about, and timely access to, all types of reproductive health services."

**The Ordinance's Advertising Regulation**

81.     The Ordinance also contains an Advertising Regulation that applies only to "pregnancy services centers" as defined by the Ordinance.

82.     The Advertising Regulation prohibits a pregnancy resource center "with intent directly or indirectly to perform pregnancy-related services (professional or otherwise)" from "mak[ing] or disseminat[ing] or caus[ing] to be made or disseminated any statement concerning those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue, misleading, or deceptive, whether by statement or omission, that the pregnancy services center knows, or which by the exercise or reasonable care should know, to be untrue or misleading."

83.     The Advertising Regulation bars any such statement made "anywhere" "in any . . . manner or means whatsoever."

84.     The Ordinance exempts hospitals, outpatient clinics, private physicians' practices, community-based health clinics, and any other medical or nonmedical facilities from having to abide by the Advertising Regulation, even if those facilities might "directly or indirectly" intend to "perform pregnancy-related services (professional or otherwise)."

85.     Hartford claims it is singling out pregnancy services centers to regulate their speech because, in part, it believes that these centers "advertise on billboards, mass-transit facilities, and through websites, and . . . utilize a technology that allows them to target social media advertisements to women when they approach or enter an abortion clinic."

86.     Any such advertisements are, however, speech protected by the First Amendment.

87.     Hartford does not claim that other entities offering pregnancy-related services do not engage in "advertis[ing] on billboards, mass-transit facilities, and through websites" or "utilize a technology that allows them to target social media advertisements to women" who are or might be pregnant. Nevertheless, all other entities besides pregnancy services centers are exempt from the Advertising Regulation.

88.     Hartford further claims it is singling out pregnancy services centers to regulate their speech because, in part, it believes that "most clients do not come to [pregnancy services centers] as a result of a referral from a medical professional."

89.     Hartford does not assert that it believes that "most clients" go to see private physicians, community-based health clinics, outpatient walk-in clinics, or other entities only "as a result of a referral from a medical professional."

90.     Hartford exempts all of these entities from the Advertising Regulation.

91.     Hartford further claims it is singling out pregnancy services centers to regulate their speech because, in part, it believes that "[c]lients with an unplanned pregnancy or at risk of an unplanned pregnancy are often experiencing emotional and physical stress and are therefore especially susceptible to false or misleading elements in advertising."

92.     Hartford does not assert that it believes that "[c]lients with an unplanned pregnancy or at risk of an unplanned pregnancy" are not exposed to advertising by other entities offering pregnancy-related services.

93.     Hartford does not assert that it believes that "[c]lients with an unplanned pregnancy or at risk of an unplanned pregnancy" do not consider or seek services from other entities offering pregnancy-related services. Nevertheless, Hartford exempts all of these entities except for pregnancy services centers from abiding by the Advertising Regulation.

94.     The Ordinance itself confesses to being a "regulation that is more protective of consumers of pregnancy center services," even though Hartford does not distinguish clients of pregnancy resource centers from clients of other pregnancy-related service providers, beyond a conclusory attack on pregnancy services centers themselves, unsupported by any evidence.

95.     As this evidence shows, Hartford is not actually interested in providing "comprehensive information" about health care to pregnant women or ensuring "timely access to[] all types of reproductive health services," as it claims.

96.     Instead, Hartford intends to interfere with certain views about life, pregnancy, and motherhood. Hartford has thus crafted a speaker-based, viewpoint-based law targeting the speech only of speakers espousing certain pro-life moral, religious, and philosophical beliefs.

**Mobile Care's Advertising and Outreach**

97.     Mobile Care has refrained from posting certain truthful statements on its grounds, on its website, and in public advertising materials in various media, and has continually reassessed its advertising plan out of fear that Hartford would deem Mobile Care's statements to be a violation of the Ordinance.

98.     Mobile Care has been chilled in communicating about its services in its preferred manner for fear of violating the Ordinance.

99.     Mobile Care wants to advertise its services and communicate that it counsels and assists pregnant women in considering their how to best face their futures.

100.    Mobile Care has refrained from using the word "options" in its advertising because it believes that any mention of "options" by a pregnancy resource center would be deemed "deceptive" or "misleading" by Hartford and would trigger application of the Ordinance.

101.    Mobile Care currently is advertising its services on City of Hartford buses.

102.    Mobile Care currently is advertising its services through flyers distributed in the community.

103.    Because of the Ordinance's vague language and targeted hostility toward pregnancy services centers, Mobile Care believes that Hartford may deem the its advertisements to violate the Ordinance and subject Mobile Care to penalty.

104.    For the same reasons, Mobile Care hesitates to engage in any published advertising of any sort.

105.    Refraining from posting certain messages also violates Mobile Care's religious beliefs because Mobile Care is religiously motivated and obligated to follow God's calling to

reach out with compassion to offer hope and help to women who may be facing unplanned pregnancies and in need of information and support.

106.     To stop this imminent irreparable harm, Mobile Care asks this Court to enjoin enforcement of the Ordinance and to declare it unconstitutional, so Mobile Care may freely speak its beliefs, freely exercise its faith, and freely serve the women of Hartford who may wish to benefit from its free support services.

**History of the Ordinance's Passage and Implementation**

107.     Through Ordinance No. 25-17, adopted December 11, 2017, the Hartford Court of Common Council amended Chapter 17 of the Hartford Municipal Code to add Article VI – "Pregnancy Information and Disclosure and Protection."

108.     The Ordinance was originally set to go into effect July 1, 2018.

109.     In June 2018, the Mayor and City Council decided to delay implementation of the Ordinance, after the United States Supreme Court ruled in *NIFLA v. Becerra* that a similar speech regulation targeted at pro-life pregnancy centers in California violated the First Amendment.

110.     In September 2018, the Mayor and City Council decided that, in spite of the Supreme Court's ruling, the Ordinance would go into effect October 1, 2018.

111.     Within days, the Hartford Department of Health and Human Services promulgated a Rule implementing the Ordinance.

112.     The Ordinance's terms and phrases such as "medical services," "pregnancy-related services (professional or otherwise)," "omission," "connected with," "misleading," and "impliedly offered" are not defined.

113.     Neither the Ordinance nor the Rule provides further guidance on how to interpret or enforce these terms.

114.     Under the Ordinance, the Hartford Department of Health and Human Services may enforce the Ordinance against a pregnancy services center at any time and has sole discretion and authority to determine whether a center is in violation of the Ordinance.

## ALLEGATIONS OF LAW

115.     At all times relevant to this Complaint, each and all of the acts alleged here are attributable to Defendant City of Hartford.

116.     Mobile Care currently suffers imminent and irreparable harm because of Defendant's actions that violate the Mobile Care's constitutional rights.

117.     Mobile Care has no adequate or speedy remedy at law for the loss of its constitutional rights.

118.     Unless the Ordinance is enjoined, Mobile Care will continue to suffer irreparable injury.

## FIRST CAUSE OF ACTION

### First Amendment: Freedom of Speech

1.     Mobile Care repeats and realleges each allegation contained in paragraphs 1-118 of this Complaint.

2.     The First Amendment Free Speech Clause protects Mobile Care's rights to speak, to publish speech, to be free from content and viewpoint discrimination, to be free from unconstitutional conditions, to be free from vague laws allowing unbridled discretion, to be free from overbroad laws, to not speak, and to not publish speech.

3.      If not for the Ordinance, Mobile Care and its agents, including its staff, would immediately engage in protected speech, including but not limited to publishing its desired messages using the words "options" to describe its services.

4.      Instead, Mobile Care is not only unable to publish or display a portion of its desired outreach materials without fear, it likewise cannot discuss its own religious beliefs without first making forced statements that suggest that Mobile Care is untrustworthy for the counsel and services it offers.

5.      Mobile Care has not and will not engage in certain protected speech to avoid violating Hartford's unconstitutional interpretation and application of the Ordinance and Rule, and to avoid incurring the penalties for violating Hartford's interpretation of that law.

6.      Mobile Care is currently suffering ongoing harm because of the Ordinance.

7.      Because the Ordinance infringes rights under the Free Speech Clause, its provisions chill, deter, and restrict Mobile Care.

8.      The Department of Health and Human Services promulgated a Rule implementing the Ordinance, which Rule compels speech and restricts speech.

9.      Further, because the Ordinance and Rule contain vague and overbroad language, the consequential speech implications make the vagueness inquiry more searching.

10.     The Ordinance mandates the Compelled Speech if a pregnancy services center does not have a "licensed medical provider on the premises who provides or directly supervises the provision of all medical services provided at such pregnancy services center at all times during which these services are being provided." The Ordinance does not define "medical services."

11.     The Ordinance's lack of definition of "pregnancy-related services (professional or otherwise)," as well as the open-ended vagueness of the terms "misleading," "deceptive," and "omission," is facially unconstitutional under the First Amendment's Free Speech Clause because its vague terms grant unbridled discretion to Hartford to ban or punish speech the government opposes and to allow speech the government supports.

12.     This permits Hartford to use unbounded discretion to punish disfavored speech on pregnancy, motherhood, sexuality, abortion, and unborn life, and other topics of public concern.

13.     This unbridled discretion also exacerbates the issue of viewpoint discrimination because it applies to only one side of the issue.

14.     Because the Ordinance violates free-speech principles for all the reasons stated above, it must further a compelling interest in a narrowly tailored way.

15.     Punishing Mobile Care's speech also does not serve any legitimate, rational, substantial, or compelling government interest in a narrowly tailored way.

16.     Hartford has alternative, less restrictive means to achieve any legitimate interest it may possess rather than forcing Mobile Care to abandon its free-speech rights.

17.     Accordingly, facially and as applied to Mobile Care, the Ordinance violates the First Amendment right to free speech.

**SECOND CAUSE OF ACTION**

**First Amendment: Free Exercise of Religion**

18.     Mobile Care repeats and realleges each allegation contained in paragraphs 1-118 of this Complaint.

19.     The First Amendment to the United States Constitution protects Mobile Care's rights to operate, publish, speak, and not speak, in accordance with its religious beliefs.

20.     Mobile Care has sincerely held religious beliefs that motivate and require it to operate its ministry in accordance with biblical moral teachings affirming the value and dignity of life at every stage, from the moment of conception, and to teach and explain those beliefs to the public and those Mobile Care serves.

21.     Mobile Care would violate its religious beliefs if it were forced to parrot a misleading and confusing government script and thus were stopped from informing others about its beliefs.

22.     The Ordinance is not neutral or generally applicable because it is based on hostility towards pregnancy services centers' religious beliefs and pro-life viewpoint, and it targets pregnancy services centers' disfavored religious beliefs for punishment.

23.     Hartford is pursuing regulations to interfere with pregnancy services centers' religious speech and exercise without any substantial evidence of a compelling need for the Ordinance.

24.     The First Amendment protects Mobile Care's right to believe and profess the religious doctrines of its choice.

25.     The First Amendment protects Mobile Care's right to communicate and exercise its beliefs in the manner and with the words it chooses.

26.     The First Amendment prohibits the government from interfering with this right by punishing the profession of a religious belief or imposing special disabilities on the basis of stating disfavored religious views.

27.     The Ordinance punishes Mobile Care's profession of its religious beliefs.

28.     The Ordinance is motivated by Hartford's hostility toward Mobile Care's religious beliefs.

29.     Application of the Ordinance is being threatened against Mobile Care and other pregnancy services centers to suppress their speech based on their own religious beliefs.

30.     The Ordinance therefore imposes special disabilities on pregnancy services centers and Mobile Care due exclusively to their profession of disfavored religious beliefs.

31.     The Ordinance is also not neutral or generally applicable because it contains categorical exemptions.

32.     The Ordinance also violates Mobile Care's free exercise rights under the hybrid rights doctrine because it implicates free exercise rights in conjunction with other constitutional rights, like the rights to free speech, expressive association, due process and equal protection.

33.     The Ordinance burdens Mobile Care's sincerely held religious beliefs by banning, deterring, and preventing its religiously motivated speech, including statements Mobile Care desires to make about "options."

34.     The Ordinance does not serve any compelling, significant or legitimate, or even valid interests in a narrowly tailored way.

35.     Accordingly, facially and as applied to Mobile Care, the Ordinance violates the First Amendment right to free exercise.

## THIRD CAUSE OF ACTION

### Fourteenth Amendment: Procedural Due Process

36.     Mobile Care repeats and realleges each allegation contained in paragraphs 1-118 of this Complaint.

37.     The Due Process Clause of the Fourteenth Amendment guarantees persons the right to due process of law, which includes the right to be free from vague guidelines granting officials unbridled discretion.

38.     The vague language of the Ordinance violates Mobile Care's Fourteenth Amendment right to due process.

39.     First, the Ordinance uses undefined terms and phrases such as "health information," "medical services," and "pregnancy-related services (professional or otherwise)" to define the criteria for whether a pregnancy resource center is subject to the Ordinance's speech regulations.

40.     The Ordinance also uses undefined terms and phrases such as "connected with," "any circumstance or matter of fact," "omission," "impliedly offered," "indirectly" to describe the speech that is prohibited.

41.     The Ordinance is vague, facially and as applied, because it outlaws communication or lack of communication about "any circumstance" or "fact" that is "connected with" performing "pregnancy-related services (professional or otherwise)."

42.     These provisions use vague and undefined terms and guidelines granting officials unbridled discretion. The Ordinance is therefore vague on its face and as applied to Mobile Care, and does not provide it fair notice.

43.     The Hartford Department of Health and Human Services has the power to investigate, apply, and enforce the Ordinance.

44.     The Ordinance gives the Department of Health and Human Services discretion such that it "may" enforce the Ordinance, and has authority to determine "noncompliance" or whether any violations were "corrected."

45.     As such, the Ordinance is devoid of procedural safeguards to protect any pregnancy services center subject to it. The broad powers given to the Department of Health and Human Services violate the concepts of legal fairness, objectivity, and due process.

46.     The Ordinance does not serve any compelling, significant or legitimate, or even valid interest in a narrowly tailored way.

47.     Accordingly, facially and as applied to Mobile Care, the Ordinance's vague language and lack of procedural safeguards violate the Fourteenth Amendment right to due process under the laws.

## FOURTH CAUSE OF ACTION

### First Amendment: Freedom of Expressive Association

48.     Mobile Care repeats and realleges each allegation contained in paragraphs 1-118 of this Complaint.

49.     The First Amendment protects the right of people to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

50.     The First Amendment prohibits the government from banning people from associating with others in an association expressing messages.

51.     Mobile Care is an expressive association because people with likeminded beliefs, including those on staff and volunteers in its organization, are joining together to assist and serve women in the Hartford area and to express their religious beliefs about God's creation of life, sexuality, pregnancy, and motherhood.

52.     The volunteers and staff at Mobile Care advocate the position that women deserve dignity, respect, and truth when seeking information and counsel about their pregnancy or a potential pregnancy. Forcing Mobile Care to make the confusing Compelled Speech would undermine its ability to advocate that position and cause it to reconsider its operations going forward.

53.     Subjecting Mobile Care to the vague and overbroad Advertising Regulation would also undermine its ability to advocate its beliefs-based position and its free association with women it seeks to associate with.

54.     Mobile Care likewise engages in expressive association when its staff and volunteers partner with each other and partner with women seeking information and counsel, teaching them certain biblical values and lessons.

55.     In offering free services to those who seek them, Mobile Care expressively associates with those women for the purpose of communicating desirable messages to those individuals.

56.     One of the reasons that Mobile Care associates with women is to express messages consistent with its religious beliefs about God's sovereign creation of life and God's ability to offer hope, peace, and love in all circumstances.

57.     Mobile Care uses real-life stories of care that it facilitated in promoting its religious view of God's design of babies in the womb, of human sexuality, and of motherhood.

58.     Mobile Care uses these real-life stories in various ways, such as in counseling sessions and speaking engagements in the community, to encourage others to adopt their religious ideals regarding God's design.

59.     When Mobile Care assists a woman with considering the baby in her womb and becoming equipped to welcome her baby into the world, it associates with that individual, who themselves become an ongoing, living example that communicates to friends, co-workers, and others regarding Mobile Care's views about God's design.

60.     It is common for people to learn about the services that Mobile Care provides from women who have used Mobile Care's or Caring Families' services.

61.     When people learn that Mobile Care assisted a woman facing an unplanned pregnancy, people believe that the services provided were consistent with Mobile Care's religious beliefs.

62.     By compelling Mobile Care to insert the Compelled Speech into its expressive association with the women it serves, Hartford forces Mobile Care to expressively associate in a way that communicates messages to women under its care and to the community that are contrary to Mobile Care's desired messages, including messages that are misleading, which contradicts Mobile Care's religious beliefs about truthfulness.

63.     The Ordinance harms Mobile Care's ability to promote its beliefs by inhibiting it from associating with others that help promote its religious messages, because those individuals would be averse to speaking the confusing Compelled Speech or chilled by the vague Advertising Regulation.

64.     Because the Ordinance infringes on Mobile Care's expressive association rights, it must further a compelling interest in a narrowly tailored way.

65.     As applied to Mobile Care, the Ordinance does not further any legitimate, rational, substantial, or compelling interest by preventing Mobile Care from expressively associating with and thereby conveying messages to the women under its care and the community consistent with Mobile Care's religious beliefs.

66.     Hartford has alternative, less restrictive means to achieve any legitimate interest it may possess other than forcing Mobile Care to abandon its freedom of expressive association.

67.     Accordingly, facially and as applied to Mobile Care, the Ordinance violates the right to expressive association protected by the Free Speech Clause of the First Amendment.

## FIFTH CAUSE OF ACTION

### First Amendment: Establishment Clause

68.     Mobile Care repeats and realleges each allegation contained in paragraphs 1-118 of this Complaint.

69.     The Establishment Clause of the First Amendment requires the government to act with a secular purpose and to neither promote nor inhibit religion.

70.     Hartford's creation of the Ordinance aimed at suppressing pro-life views lacks any secular purpose. Instead, Hartford has targeted and singled out religious speech and belief for exclusion.

71.     Hartford's threatened enforcement of the Ordinance violates the Establishment Clause by manifesting hostility toward religious speech and belief.

72.     Hartford's threatened enforcement of the Ordinance singles out Mobile Care and other pro-life pregnancy centers based on disfavored religious views and sends a message that religious people, such as Mobile Care's staff and volunteers, are second-class citizens, phonies, and not full members of the community.

73.     Because the Ordinance violates the Mobile Care's rights under the Establishment Clause, it must further a compelling government interest in a narrowly tailored way.

74.     Targeting pro-life pregnancy services centers for exclusion based on a disfavored religious view does not further any legitimate, rational, substantial, or compelling government interest; nor does it serve any legitimate government interest in a narrowly tailored way.

75.     Accordingly, facially and as applied to Mobile Care, the Ordinance violates the Establishment Clause of the First Amendment to the United States Constitution as incorporated and applied to the States through the Fourteenth Amendment.

## SIXTH CAUSE OF ACTION

### Connecticut Constitution Article 1 § 3 and Connecticut General Statutes Sec. 52-571b.:

### Freedom of Religion

76.     Mobile Care repeats and realleges each allegation contained in paragraphs 1-118 of this Complaint.

77.     Article 1, § 3 of the Connecticut Constitution provides that "[t]he exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in the state."

78.     Connecticut General Statute section 52-571b provides that "The state or any political subdivision of the state shall not burden a person's exercise of religion under section 3 of article first of the Constitution of the state" unless the "it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest, and (2) is the least restrictive means of furthering that compelling governmental interest."

79.     The Ordinance burdens Mobile Care's religious exercise by using speech regulations and threats of enforcement of civil penalties to force Mobile Care to surrender its expression of religious beliefs in order to continue attempting to offer its free services to the community.

80.     Hartford has targeted and singled out religious speech and belief for government regulation. This differential treatment is based upon the fundamental right of freedom of religion.

81.     The Ordinance violates Article 1, § 3 of the Connecticut Constitution and Section 52-571b of the Connecticut General Statutes by singling out religious speech and belief for hostility.

82.     The Ordinance singles out pregnancy resource centers like Mobile Care based on disfavored religious views and sends a message that religious people, such as Mobile Care's staff and volunteers, are second-class citizens, phonies, and not full members of the community.

83.     Because the Ordinance violates Article 1, § 3 of the Connecticut Constitution, it must further a compelling government interest in a narrowly tailored way, which it does not.

84.     The exercise of governmental authority that threatens to burden Mobile Care's rights under Article 1, § 3 of the Connecticut Constitution and Section 52-571b of the Connecticut General Statutes is imminent.

85.     Accordingly, facially and as applied to Mobile Care, the Ordinance violates of the Connecticut Constitution and Section 52-571b of the Connecticut General Statutes.

## PRAYER FOR RELIEF

Mobile Care respectfully requests that this Court enter judgment against Defendant and provide Mobile Care with the following relief:

(A)     A permanent injunction to stop Hartford and any person acting in concert with it from enforcing Ordinance No. 25-17 as applied to the constitutionally protected activities of Mobile Care and its agents, and all others, including their right to truthfully describe its mission and services in its own words;

(B)     A declaration that the Ordinance violates the United States Constitution's Free Exercise of Religion, Freedom of Speech, Establishment, Due Process, and Equal Protection Clauses, Connecticut General Statute Section 52-571b, and Article 1, Section 3 of the Connecticut Constitution, facially and as applied to the constitutionally protected activities of Mobile Care and its agents, including its right to truthfully describe its mission and services in its own words;

(C)     That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter in controversy so that these declarations shall have the force and effect of a final judgment;

(D)     That this Court award compensatory and/or nominal damages for the violation of Mobile Care's constitutional and statutory rights;

(E)     That this Court retain jurisdiction of this matter for the purpose of enforcing its orders and that it adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy so that these declarations shall have the force and effect of final judgment;

(F)     That this Court award Mobile Care costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988; and

(G)     That this Court grant any other relief that it deems equitable and just in the circumstances.

Respectfully submitted this 17th day of April, 2019.

By: *s/ Denise M. Harle*

Kevin H. Theriot*
Arizona Bar No. 030446
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 (Fax)

Patricia D. Stewart
STEWART LAW OFFICES
Federal Bar No. CT05935
153 Prospect Street
Norwell, MA 02061
(781) 659-2220

David A. Cortman*
Georgia Bar No. 188810
Denise M. Harle*
Georgia Bar No. 176758
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., NE, Suite D1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 (Fax)

*Attorneys for Plaintiff*

* pro hac vice admission forthcoming

I, Jeremy Bradley, a citizen of the United States and a resident of the State of Connecticut, hereby declares under penalty of perjury that I have read the foregoing Verified Complaint and the factual allegations contained therein, and the facts as alleged are true and correct.

Executed this 15 day of April, 2019, in WILLIMANTIC, Connecticut.

_____
JEREMY BRADLEY
Executive Director
Caring Families Pregnancy Services